THE STATE OF OHIO *v.* CLAY.

(No. 87CRB30023—Decided March 31, 1988.)

Hamilton County Municipal Court.

*Karl P. Kadon III,* assistant city prosecutor, for plaintiff.
*H. Fred Hoefle,* for defendant.

PAINTER, J. This matter was tried to the court, the defense offering no evidence after the conclusion of the case by the prosecution. Both parties subsequently submitted briefs at the invitation of the court.

The defendant stands charged solely with resisting arrest, in violation of R.C. 2921.33(A), which states: "No person, recklessly or by force, shall resist or interfere with the lawful arrest of himself or another."

The facts in this matter are undisputed, and were set out in the testimony of Cincinnati Police Officer Art Evans. Officer Evans, while conducting a routine security check at University of Cincinnati Hospital, observed the defendant in the hallway of the emergency entrance. The defendant was a patient, occupying a bed in the hallway. The officer observed the defendant yelling obscenities and ripping his hospital gown.

A doctor approached Officer Evans and explained that the defendant "had attempted suicide and he needed psychiatric care," and that he was going to leave the hospital without permission from the doctor. The doctor asked Officer Evans to stop the defendant from leaving.

Officer Evans testified that the defendant donned his street clothes and bolted through the emergency entrance when approached by the officer. Evans then chased the defendant out of the hospital and into the hospital parking lot, shouting, "police, stop. I need to talk to you." The defendant answered with obscenities and continued to flee.

When the defendant reached the main gate to the hospital he stopped, drawing a small crowd. Officer Evans stated that as he attempted to approach the defendant, the defendant told him to stop and "to come no farther." The officer explained that it was his responsibility to take him back to the hospital and that there would be no criminal charges, but the defendant refused. Officer Evans then took the arm of the defendant and a melee ensued between the officer and the defendant, also involving several erstwhile onlookers who were siding with the defendant.

Six to eight police officers responded to Officer Evans' request for assistance, and were successful in restoring order. A force of three officers was required to gain control of the defendant. Two formerly innocent bystanders were also arrested for their involvement in the incident, but their

cases are not before the court at this time. Officer Evans testified that he arrested the defendant where the "squabble ensued," adding that the charge was "for walking away from psychiatric care."

R.C. 2921.33(A) specifically provides that the crime of resisting arrest includes, as an essential element, a lawful arrest. *Hoover* v. *Garfield Hts. Mun. Ct.* (C.A. 6, 1986), 802 F. 2d 168, 174, certiorari denied (1987), 480 U.S. 949. In determining the lawfulness of an arrest, the elements of the underlying charge need not be proven, but there must exist a "reasonable basis" for the arrest. *State* v. *Johnson* (1982), 6 Ohio App. 3d 56, 6 OBR 268, 453 N.E. 2d 1101; *State* v. *Kirchner* (1984), 19 Ohio Misc. 2d 7, 19 OBR 183, 483 N.E. 2d 497; *Coffel* v. *Taylor* (S.D. Ohio 1978), 8 O.O. 3d 253. The "reasonable basis" test considers whether a reasonable police officer under similar circumstances would have concluded the defendant had committed a crime suitable for arrest. *State* v. *Johnson, supra.*

This court is aware that the Ohio Supreme Court stated, in *Columbus* v. *Fraley* (1975), 41 Ohio St. 2d 173, 70 O.O. 2d 335, 324 N.E. 2d 735, certiorari denied (1975), 423 U.S. 872, that it was judicially abrogating the common-law rule that one may use force to resist an unlawful arrest. "* * * [I]n the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances." *Fraley,* at 180, 70 O.O. 2d at 339, 324 N.E. 2d at 740.

The common-law rule that one could use force to challenge the law-fulness of an arrest, pronounced in *The Queen* v. *Tooley* (1709), 2 Ld. Raym. 1296, 92 Eng. Rep. 349, might have been appropriate to that and previous times. However, what was perhaps applicable to the Sheriff of Nottingham should not be applicable in our allegedly more civilized society. Not only are the authorities much more accountable to courts and subject to legal restraints, but judicial review of police action is readily available, in that the accused is brought before a magistrate almost immediately. Crim. R. 4(E). Abuse of police power can be addressed before a lengthy passage of time. The present legal system, with almost instantaneous access to bail, to judicial review, and even appellate review must be contrasted with a rural or frontier society, with judges "riding circuit," wherein defendants might languish in jails for weeks before an "unlawful" arrest could be reviewed. The legality of an arrest should be contested in the courtroom under law, not on the street under arms.

All of the above considerations underlie the Ohio Supreme Court's pronouncement in *Fraley,* with which this court totally agrees. However, as pointed out by the Sixth Circuit Court of Appeals in *Hoover, supra,* the *Fraley* pronouncements must be dicta since that court did not have the resisting arrest statute before it; rather, its ruling involved a Columbus city ordinance which did not make "lawful arrest" an element of the offense. The legislature has elected to make a "lawful arrest" an element of R.C. 2921.33 (A). Therefore, the *Fraley* court abolished the common-law rule in Ohio, but the element of lawful arrest is still a part of R.C. 2921.33(A) and each element must be proved by the prosecution before a conviction will pass constitutional muster. *In re Winship* (1970), 397 U.S. 358, 364. We commend to the attention of the legislature

the issue of whether the element might well be removed, especially in light of the *Fraley* rationale, but this court can not judicially change the statutory law.

The defendant was not charged with any underlying criminal charge; so, at first glance it would appear difficult to "resist" that arrest. However, the prosecution contends that the defendant arguably could have been charged with disorderly conduct, R.C. 2917.11 and/or escaping from a mental institution, R.C. 5122.26. The fact that a charge was not filed does not mean that there was no reasonable basis to believe that the defendant was subject to arrest. Each possible charge must be scrutinized under the "reasonable basis" test to determine whether the defendant can be convicted of resisting arrest. If there was a reasonable basis for the arrest, then the arrest was "lawful," whether or not a conviction for the underlying offense was or could have been attained. *State* v. *Johnson, supra; State* v. *Kirchner, supra.*

The disorderly conduct statute, R.C. 2917.11, states in pertinent part: "No person shall recklessly cause inconvenience, annoyance, or alarm to another * * *."

"An arrest for disorderly conduct is lawful when, under the circumstances, it is probable that a reasonable police officer would find an individual's language and conduct annoying or alarming and would be provoked to want to respond violently." *State* v. *Johnson, supra,* at paragraph two of the syllabus.

Officer Evans testified that the defendant ran from him and shouted obscenities. While this conduct may be objectionable to some, it does not create the requisite provocation or violent reaction required by applicable standards. *State* v. *Johnson, supra.* As a police officer, Officer Evans is surely no stranger to obscene language. It is perhaps an unfortunate but accepted part of modern life. Further, Officer Evans' training must equip him to deal with excitable people. When the defendant ran away, this surely would not provoke a reasonable officer to this point of violence. As a result, nothing in the defendant's language or action can reasonably be regarded as disorderly conduct. It is the view of this court that Officer Evans did not have a reasonable basis for arresting the defendant on the disorderly conduct charge, and he did not in fact do so.

The prosecution also contends that defendant could have also been charged with escaping from a mental institution, R.C. 5122.26. That provision provides in pertinent part: "A patient absent without leave, on a verbal or written order issued within five days of the time of the unauthorized absence, by the department of mental health, the head of the hospital from which such patient is absent without leave, or the court of either the county from which he was committed or in which the patient is found, may be taken into custody by any health or police officer * * *."

Officer Evans testified that at the time of the arrest he told the defendant he was being charged with "walking away from psychiatric care." R.C. 5122.26 does not deal with persons generally walking away from psychiatric care, but more narrowly focuses on those persons "absent without leave" who are under an order (usually a court order) to remain in a mental health hospital or institute. There was no evidence that the defendant was "committed" to the hospital, and our law has not progressed (or worse) to the point where one can be committed to "psychiatric care" without some formal proceedings. Also, R.C. 5122.26 is not a criminal offense, but rather an authority to take someone "into

custody." No penalty is provided, so it is not a criminal offense.

Thus, the defendant could have violated neither of the sections advanced by the prosecutor as possible underlying charges which could have formed a "reasonable basis" for the arrest, thus subjecting defendant to a charge of resisting arrest.

At the very least, this set of facts presents a somewhat novel practical and philosophical issue. It is difficult for this court to imagine that any reasonable police officer would not respond just as did Officer Evans to a plea by a doctor to stop a possibly dangerous mental patient. Should the officer simply have walked away and ignored the request, risking the possibility of a dangerous psychopath on the loose, on the probably correct legal theory that there might not have been probable cause to arrest the defendant?

We are presented with an age-old question: where do the rights of defendant end and those of society begin? Defendant certainly has a right to be free from arrest unless there is a reasonable basis to believe he has committed a crime — and the right to personal liberty is the most fundamental of all. But society also has a right to be free from disturbed and possibly violent and dangerous people in its midst. This case is so troubling to this court because it seems to teeter on that delicate edge. Regardless of the Magna Carta, the Constitution, and all the learned treatises, essays and speeches on the subject, some constitutional law really comes down to the parking lot at University of Cincinnati Hospital.

What in the name of all that is reasonable should the officer have done? The court finds that the officer acted properly under the circumstances known to him at the time — and the reasonableness of an officer's actions must be judged at the exigent split sec-

ond on the street, not in the cold, reflective and hindsightful light of the courtroom. But the defendant's rights must be judged by the latter standard. Should the officer's conduct be judged by one standard, and the defendant's rights by another? Very possibly, since the genesis of each is quite different, and the answer is set out below.

The court finds that there was no evidence adduced by the prosecution sufficient to constitute a "reasonable basis" for the arrest of the defendant, and consequently he must be acquitted of resisting arrest, the only offense with which he was charged.

However, the court is constrained to comment that neither party addressed the issue of R.C. 5122.10, which could well have some bearing on this case. That section states as follows: "Any psychiatrist, * * * licensed physician, * * * police officer, or sheriff may take a person into custody * * * and may immediately transport him to a hospital * * * if [the physician, officer, etc.] has reason to believe that the person is a mentally ill person subject to hospitalization by court order under * * * [R.C. 5122.01(B)], and represents a substantial risk of physical harm to himself or others if allowed to remain at liberty pending examination."

This court has no doubt but that Officer Evans had reason to believe, based on the statements of the physician that the defendant had attempted suicide, and that the defendant was subject to being "taken into custody" under this section, pending an examination and proper legal proceedings pursuant to R.C. 5122.01 *et seq.* However, though penalties for other violations of other sections are set out in the penalty section, R.C. 5122.99, it is not made a crime for the putatively "mentally ill person" to resist, probably on the eminently

reasonable theory that such a person, in order to be subject to being "take[n] * * * into custody" (note that the section does not refer to "arrest"), must be mentally ill and arguably not criminally responsible for his actions. It is obviously necessary for physicians and police officers to have the authority to take dangerous persons to emergency treatment (subject to rigid legal safeguards); but it is also axiomatic that it is not a criminal offense to refuse to go.

This case is just one of perhaps many situations where the police must use reasonable force to discharge their duties, but where no criminal charge must necessarily arise.

*Defendant discharged.*