CITY OF GARFIELD HEIGHTS, Appellee,

v.

SIMPSON, Appellant.

[Cite as *Garfield Hts. v. Simpson* (1992), 82 Ohio App.3d 286.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61499.

Decided Dec. 7, 1992.

*Gerald R. Stachewicz,* for appellee.

*Nicholas J. Schepis,* for appellant.

---

DYKE, Presiding Judge.

Defendant-appellant John S. Simpson ("defendant") appeals from his conviction for resisting arrest in violation of R.C. 2921.33. For the reasons set forth below, we reverse.

## I

Following an incident involving Garfield Heights police on December 4, 1990, defendant was charged with disorderly conduct, obstruction of official business, and resisting arrest. Defendant pleaded not guilty and the matter proceeded to a jury trial on February 20, 1991.

For its case, the prosecution presented the testimony of Garfield Heights Police Officers Thomas Piasecki, Douglas Dillon, James Mendolera, Thomas Kaiser and Sergeant James Brearey.

The testimony of Piasecki and Dillon established that Garfield Heights police had planned to serve a warrant in a drug case in the area of East 131st Street and were to meet members of the department's SWAT and SEAL teams in the parking lot of Hilltop Lanes, adjacent to Pioneer Electric.

Piasecki and Dillon arrived first, in a marked police cruiser. Shortly thereafter, the SWAT team arrived, and the group continued to wait for Sergeant Brearey. Upon Brearey's arrival, defendant, who was working as a security guard at Pioneer Electric, flagged Brearey down, stepped out of his vehicle, and had a conversation with Brearey. The officers could not hear the conversation, but they claimed that defendant appeared irate, and pointed his finger at Brearey. Brearey then got out of his vehicle and the conversation continued until defendant returned to his vehicle.

The officers next observed Brearey follow defendant and open the door of appellant's vehicle, whereupon the officers joined Brearey and heard him place defendant under arrest. Defendant then grabbed the steering wheel and refused to get out until Kaiser sprayed mace into the vehicle.

Mendolera and Kaiser, who arrived on the scene after Piasecki and Dillon, likewise established that defendant flagged down Brearey and had a conversation with him. During this time, defendant appeared upset, and was pointing. Neither officer heard the content of the conversation, however. Later, as Brearey advised defendant that he was under arrest, the officers assisted Brearey in apprehending defendant.

Brearey testified that he arrived at Hilltop Lanes, the staging area for coordinating service of the warrant, after several marked cruisers had already arrived. Defendant then flagged him down, and according to Brearey:

"[Defendant] got out of his car and started talking to me. He said I want all these f----- police cars out of here and all you policemen out of the area.

"Q. What was your response to him?

"A. We were here to conduct an operation. I said we won't be here long. And besides, were [sic] on what I know to be Hilltop Lane's property, we're not on your property. The operation won't take long and it is none of your business, these are all officers.

"* * *

"I tried to explain to him that this was official police business, that we were going to be there a short period of time, and that he was interfering and he was being disorderly.

"Q. Was Mr. Simpson out of his vehicle at that time?

"A. He did get out of his vehicle at that time.

"Q. What was he doing?

"A. He starts pointing his finger at me in my vehicle, telling me I want all of you to get out of here, get the f--- out of here, and just harassing me and giving me a hard time.

"Q. Did you ever see Mr. Simpson before?

"A. No, sir.

"Q. What did you say to him?

"A. I told him, look, leave the operation alone, we're not on your property, we're not bothering you. I said just cease and desist in your actions, you are obstructing what is an official operation.

"Q. How many times did you tell him this, officer?

"A. Numerous times over about five minutes.

"Q. What if anything did the Defendant do after each time?

"A. Just yelling at me more and more and telling me to get the vehicles off of the property.

"Q. Did you have any other conversation with the Defendant?

"A. Yes, I eventually got out of my vehicle.

"Q. What did you do when you got out of your vehicle?

"A. I asked him to produce his driver's license.

"Q. Did he?

"A. Yes.

"Q. Then what happened?

"A. He asked why I wanted his driver's license for and I said because I was arresting him for disorderly conduct and obstructing official business.

"Q. Then what did he do?

"A. At that time he jumped into his vehicle and said f— you, you can't arrest me, I am a security guard and get off this property."

Brearey further testified that defendant pointed his finger at him, striking him in the chest, and that defendant was screaming at the top of his lungs. In addition, Brearey claimed that defendant had obstructed service of the warrant because he had delayed Brearey, and the subject of the warrant was not home when the police finally arrived.

For his case, defendant testified on his own behalf and also offered the testimony of his co-employees Eric Conti, James Winter and Calvin Rogers.

Conti testified that security guards are responsible for the parking lots of the premises which they are guarding, and have to be alert for vandals and suspicious persons. Conti, together with Winter and Rogers, also established that defendant is dependable and had never had any previous problems at work.

Finally, Rogers and Winter reported that defendant had a welt on his head shortly after the incident.

Defendant testified that he has eight years' experience as a security guard. His duties with respect to Pioneer included deterring theft and vandalism in the parking lot. In this connection, defendant was instructed to determine the identity of the driver of any suspicious looking vehicles, and to remove non-employees from the lot.

With respect to the events of December 4, 1990, defendant testified that at approximately 6:30 p.m., three unmarked vehicles pulled into the lot of Pioneer Electric. The drivers got out of the vehicles and defendant approached them to determine the identities of the drivers. One of the men stated that he was a police officer, but neither he nor the others produced badges or other identification.

Thereafter, Brearey arrived in a marked police cruiser and asked defendant for identification. Defendant gave Brearey his driver's license and Brearey then instructed defendant to get into the cruiser. Defendant refused to do so, however, and got into his own vehicle then grabbed onto the steering wheel until he was forcibly removed and sprayed with mace. Defendant further stated that the officers hit his head on the hood of Brearey's vehicle and injured him.

The jury subsequently found defendant not guilty of obstructing official business and disorderly conduct, and guilty of resisting arrest.

Defendant now appeals.

## II

For his first assignment of error, defendant asserts that the trial court erred in denying his motions for acquittal, which were made following the presentation of the prosecution's evidence, and again after the verdicts were returned, see Crim.R. 29(A) and (C), because he claims that there was no evidence that he forcibly resisted a lawful arrest.

As set forth in *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus,

"a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

■ The elements of a charge of resisting arrest are to recklessly or by force resist or interfere with the lawful arrest of oneself or another. R.C. 2921.33(A).

As to the element of "force," we note that this term is defined in R.C. 2901.01(A) as:

"any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."

In this case, the undisputed evidence that defendant resisted arrest by physically seizing his steering wheel amply meets the element of force.

As to the element of a "lawful arrest," we further note that it is incumbent upon the state to prove as an element of the offense that the arrest was lawful. *Strongsville v. Waiwood* (1989), 62 Ohio App.3d 521, 524, 577 N.E.2d 63, 64; *State v. Johnson* (1982), 6 Ohio App.3d 56, 58, 6 OBR 268, 270, 453 N.E.2d 1101, 1103; *State v. Clay* (1988), 43 Ohio Misc.2d 5, 6, 539 N.E.2d 1168, 1169.

In determining the lawfulness of an arrest, the elements of an underlying offense need not be proven, but there must exist a "reasonable basis" for the arrest. *Id., State v. Johnson, supra.* That is, conduct which does not amount to an offense beyond a reasonable doubt may supply the officers with a reasonable basis for the arrest. *State v. Kirchner* (1984), 19 Ohio Misc.2d 7, 8, 19 OBR 183, 185, 483 N.E.2d 497, 499. The "reasonable basis" test considers whether a reasonable police officer under similar circumstances would have concluded that the defendant committed a crime suitable for arrest. *Id.*

The prosecution contends that the reasonable basis test is met here because it could reasonably have been concluded that defendant obstructed official police business by delaying execution of the warrant and/or engaged in disorderly conduct, notwithstanding his subsequent acquittals for those offenses. This contention lacks merit.

First, considering whether a charge of obstructing official police business supplies a rational basis, we note that obstructing official business, in violation of R.C. 2921.31, is established where there is both an illegal act which quickens the duty of the police officer to enforce the law, and interference with intent to impede that enforcement. *Warrensville Hts. v. Watson* (1976), 50 Ohio App.2d 21, 25, 4 O.O.3d 12, 14, 361 N.E.2d 546, 549. In this case, however, there is absolutely no evidence that defendant intentionally impeded execution of the search warrant, and no evidence that he even knew that this was the purpose of the officer's convergence at the parking lot.

Further, one cannot obstruct official business by doing nothing. *Hamilton v. Hamm* (1986), 33 Ohio App.3d 175, 176, 514 N.E.2d 942, 943. Thus, obstruction has not been found where there is an omission, rather than commission of an act. See *Hamilton v. Hamm, supra* (refusal to sign an agreement to pay the fine imposed by the court is not obstruction); *State v.*

*Muldrow* (1983), 10 Ohio Misc.2d 11, 10 OBR 164, 460 N.E.2d 1177 (refusal to be fingerprinted as part of police identification procedure is not obstruction); *Dayton v. Peterson* (1978), 56 Ohio Misc. 12, 10 O.O.3d 169, 381 N.E.2d 1154 (refusal to disclose name in response to police inquiry is not obstruction). Here, defendant did not act to impede the police. Rather, he refused to get into the cruiser. Accordingly, there was no rational basis for concluding that defendant obstructed official business.

■ Second, considering whether a charge of disorderly conduct supplies a rational basis for the arrest, we note that although the complaint against defendant was that he was disorderly "by engaging in turbulent behavior," there was no evidence that he "fought," "threatened harm," or otherwise engaged in "violent behavior." Accordingly, there was no evidence to sustain this charge. See *State v. Reeder* (1985), 18 Ohio St.3d 25, 27, 18 OBR 21, 22, 479 N.E.2d 280, 282. Further, defendant's alleged prearrest comments, *i.e.*, "I want all these f—— police cars out of here and all you policemen out of the area," "get the f— out of here," and "get the vehicles off the property" clearly do not constitute "fighting words" which are not constitutionally protected and may be punished. See *Cincinnati v. Karlan* (1974), 39 Ohio St.2d 107, 109, 68 O.O.2d 62, 63, 314 N.E.2d 162, 164. That is, the alleged remarks were spoken to clear the lot, and not to abuse the officers, and would not provoke the average person to a retaliating breach of the peace. Accord *Kent v. Kelly* (1975), 44 Ohio St.2d 43, 73 O.O.2d 230, 337 N.E.2d 788 (defendant's statement to police to "stay away from the f—— door," "get the f— out of here," and "what do you think you're doing?" held not to constitute "fighting words"). Accordingly, there was no rational basis for concluding that defendant had engaged in disorderly conduct.

Absent a rational basis, the arrest was not lawful. The absence of this element, moreover, precludes defendant's conviction for resisting arrest, and defendant's motion for acquittal was therefore erroneously denied.

Defendant's first assignment of error is well taken.

### III

For his second assignment of error, defendant asserts that his conviction for resisting arrest is against the manifest weight of the evidence. Because we have reversed defendant's conviction for this offense on the basis that the evidence was insufficient to establish the element of a lawful arrest, this assignment of error is likewise well taken.

The judgment of the trial court is reversed.

*Judgment reversed.*

NAHRA and HARPER, JJ., concur.