JOURNAL ENTRY AND OPINION
Laurie Campbell and Donald J. Ferrone appeal from a judgment of the Parma Municipal Court entered pursuant to a jury verdict finding them guilty of obstructing official business. On appeal, they argue that their convictions are against the manifest weight of the evidence and not supported by sufficient evidence, and they further argue ineffective assistance of counsel and court error in the introduction of evidence. After a careful review of the record and applicable law, we have determined that these convictions are not supported by sufficient evidence and we therefore vacate the judgments of conviction and discharge the appellants.
The circumstances of this case arose from a custody dispute involving four-year-old Heather Campbell, who lived with her mother, Laurie Campbell, and her mother's boyfriend, Donald J. Ferrone. Sometime prior to July 23, 1999, Laurie Campbell's maternal grandmother, Janette Boston, learned that Heather stated Ferrone had struck her. On July 23, 1999, Boston and Laurie Campbell's mother, Joan Ewart, contacted the Cuyahoga County Department of Children and Family Services (CCDCFS) and reported the alleged hitting incident. In accordance with instructions received from CCDCFS, they drove that day to Ferrone's house in an effort to retrieve the child and bring her to the agency. When they arrived, they learned that Campbell, Ferrone, and Heather were planning to leave for a trip to Niagara Falls that morning. At that time, Boston called the agency to advise it of the imminent departure. Realizing that her mother and her grandmother planned to take Heather from her, Laurie, Heather's legal custodian, began yelling for Ferrone to take Heather out of there. Ferrone grabbed Heather and drove off with her in his car.
Twenty minutes later, Dina Yates, a caseworker from CCDCFS arrived, followed by police officers Daniel Straub and Thomas O'Grady, whom she had contacted. The officers, after learning that Ferrone had removed Heather from the area, knocked on the door and identified themselves, but could not get Campbell to open the door. Upon finding a red substance on the door, they forced it open and went inside the house, asking Campbell to come to the front porch. Campbell refused to give the officers any information regarding Heather's whereabouts other than the phone number of Ferrone's business, a bar known as Images. The officers testified later that when they encountered her in the house, she was extremely irate, uttered obscenities at them, and flailed around. While there, Officer O'Grady answered two calls on Campbell's cell phone, one of which he believed to have been made by Ferrone, who stated that the city is going to see the biggest lawsuit it's ever seen, and further refused to bring Heather to the police station. As a result of Campbell's uncooperative behavior, the officers arrested her for obstruction of official business, handcuffed her, and transported her to the police station.
Later that day, Yates obtained an emergency ex parte order granting custody of Heather to CCDCFS.
Thereafter, Campbell contacted Kathy, her friend whom Ferrone had taken Heather to visit that afternoon, advising her of the change in custody of Heather and directing her to bring Heather to the Parma police station. At that point, Ferrone also drove to the police station in his own vehicle.
The police then arrested Ferrone and charged him with obstruction of official business and interference with custody in violation of Parma City Ordinances.
At trial, Officers Straub and O'Grady testified that Campbell, agitated by their presence in her home, refused to calm down or provide them information regarding Heather's whereabouts; they did, however, obtain information from Boston and Ewart as to Ferrone's vehicle. Officer O'Grady testified that he answered two incoming calls as he stood on the front porch: in the first phone call, after a male caller identified himself as an employee of Ferrone, O'Grady informed him that he needed to speak to Ferrone; in the second phone call, an irate male caller asked O'Grady what the f--- [he] was doing in [his] house, and told O'Grady to get the f--- out of [his] house. O'Grady, concluding that Ferrone had made the call, asked him to bring Heather to the police department, to which the caller responded: I'm not taking that f---ing kid anywhere; the caller further stated that the city is going to see the biggest f---ing lawsuit it's ever seen. At the close of the state's case, Campbell and Ferrone moved for acquittal but the court denied their joint motion.
In their case-in-chief, the defense called Nick Labella, a school teacher who worked as a DJ at Ferrone's bar on weekends. He testified that he made two phone calls to Ferrone's residence on July 23, 1999: he first called Ferrone to make some business arrangements, and, after being surprised by the police officer's presence in Ferrone's home, he decided to make a prank phone call identifying himself to Officer O'Grady as Don Ferrone, in order to find out why the police were there. He testified that he stated to O'Grady that he did not have a warrant to be present at his house and that there would be a lawsuit against the City of Parma and the Police Department, but he denied having stated that he was not bringing that f---ing kid anywhere.
Ferrone, testifying on his own behalf, stated that he saw Ewart and Boston dragging Heather across his front yard as Campbell chased after them screaming for them to stop. With Campbell yelling for him to get Heather out of there, he put Heather into his car and drove off with her.
Campbell also testified that she asked Ferrone to remove Heather from the scene.
Following the trial, the jury returned a verdict finding Ferrone not guilty of interference with custody, but finding Campbell and Ferrone guilty of obstruction of official business. Although Campbell and Ferrone now appeal separately from this jury verdict, they submitted a joint brief raising four assignments of error. We will therefore review both appeals together in this opinion.
We shall address the second assignment of error first, which states:
 II. THE TRIAL COURT ERRED IN DENYING DEFENDANTS' RULE 29 MOTION AS TO THE OBSTRUCTION OF OFFICIAL BUSINESS WHEN THE CITY OF PARMA FAILED TO PRESENT SUFFICIENT EVIDENCE THAT THE CRIME WAS COMMITTED.
Campbell and Ferrone maintain that the trial court erred in not granting their Crim. R. 29 motion for acquittal made at the close of the city's case. Specifically, Campbell contends that her conduct in failing to open the door or to provide information to the police does not constitute an act proscribed by the ordinance. Ferrone contends that he did not commit any act to hamper the police in performance of their lawful duties because he maintains he did not call Officer O'Grady and furthermore he returned Heather to the Parma police immediately after he learned of the emergency custody order.
The city contends that Campbell's failure to open the door or to respond to police inquiries regarding Heather's whereabouts hampered the ability of the police to look for the vehicle carrying Heather. Regarding Ferrone, the city asserts that during his phone conversation with Officer O'Grady, he commented repeatedly about the officers being in his house; indicated that he would sue the city; stated that he would not bring Heather to the police station; and hurled obscenities and insults at Officer O'Grady.
The issues then for our review concern whether Campbell's conduct in refusing to open the door for the police and to provide them with the requested information and whether Ferrone's conduct in allegedly making boisterous statements to the police over the telephone constitute the crime of obstruction of official business.
Crim.R. 29(A) states, in relevant part:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
The test for sufficiency of evidence raises a question of law to be decided by the court before the jury may receive and consider the claimed offense. In State v. Martin (1983), 20 Ohio App.3d 172, the court summarized the standard of review for this type of claim:
 * * *[T]he test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt.
Parma Codified Ordinance 606.14, substantially similar to R.C.2921.31, sets forth the elements of obstruction of official business. It states, in pertinent part:
 (A) No person without privilege to do so and with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties.
Regarding Campbell's arrest for failure to answer the door when police arrived and for refusing to provide information to police regarding her daughter's whereabouts, a review of the case law indicates that courts generally have required an affirmative act for the offense of obstruction of official business, see N. Ridgeville v. Reichbaum (1996),112 Ohio App.3d 79, 84; Hamilton v. Hamm (1986), 33 Ohio App.3d 175,176. Mere failure to obey a law enforcement officer's request does not bring a defendant within the ambit of this offense, see Garfield Hts. V. Simpson (1992), 82 Ohio App.3d 286. Specifically, the court in City of Columbus v. Michel (1978), 55 Ohio App.2d 46, held that failure to open the door upon request by the police does not constitute obstruction of official business. Similarly, refusal to provide information to police does not render one guilty of that offense, see State v. McCrone (1989),63 Ohio App.3d 831.
Therefore, Campbell's conduct in failing to answer the door or to provide information to police on Heather's whereabouts is insufficient to support a conviction of obstruction of official business; accordingly, the trial court erred in denying Campbell her Crim. R. 29 motion to dismiss.
Regarding Ferrone's arrest for allegedly making boisterous statements to police telling them to leave his house; suggesting he would file a lawsuit against the city for the officers' presence in his house; and refusing to bring Heather to the police station, the issue concerns whether the making of such statements constitutes an act as that term is used in the ordinance.
The Supreme Court of Ohio, in State v. Lazzaro (1996), 76 Ohio St.3d 261, has held that
 the making an unsworn false oral statement to a public official with the purpose to mislead, hamper or impede the investigation of a crime is punishable conduct within the meaning of * * * R.C. 2921.31(A).
However, we are not concerned with the making of false statements in this case; rather, Ferrone is accused of participating in a boisterous telephone conversation with Officer O'Grady. The Ohio Supreme Court has not ruled on the issue of whether true statements spoken boisterously to a public official constitute the proscribed conduct. A review of the appellate decisions suggests that the courts have taken a case-by-case approach while mindful that inclusion of mere speech as a proscribed conduct may run afoul of the constitutionally protected right of freedom of speech.
In City of Warren v. Lucas (May 19, 2000), Trumbull App. No. 99-T-0019, unreported, for example, the court affirmed the conviction of a defendant who became loud and belligerent and repeatedly interrupted police officers who were questioning another individual, to the point where the officers could not conduct their questioning. The court concluded that the defendant's volume and demeanor, more than any specific words that were said, prevented the police investigation and obstructed official business.
In State v. Foster (Sept. 17, 1997) Seneca App. No. 13-97-09, unreported, the court affirmed a defendant's conviction where he had gone to a police station to file a complaint of police harassment and, upon being told by the dispatcher to return the following day, became angered and continued to make repeated demands to the dispatcher, which prevented the dispatcher from performing her job of monitoring police radio transmissions and other dispatching duties.
In State v. Overholt (Aug. 18, 1999), Medina App. No. 2905-M, unreported, the court found the defendant's repeatedly shouting insults at the officers, which distracted them and prevented them from making an arrest of another individual, constituted an act for the offense of obstruction of official business.
In City of Dayton v. Van Hoose (Dec. 8, 2000), Montgomery County, App. No. 18053, unreported, the court affirmed the conviction of the defendants, who complained to the police about the presence of a prostitute on their street, and, after detectives explained to them the identity of the woman as an undercover officer conducting a decoy prostitution sting, they hollered from their yard revealing the undercover officer's identity to potential customers with the purpose of forcing her to leave, thereby obstructing the investigation.
Our review of the case law, therefore, indicates that courts have affirmed convictions for obstruction of official business only when the manner and context of the boisterous statement prevented a public official from carrying out his or her lawful duty.
Here, regarding the phone conversation with Officer O'Grady, which forms the sole basis of the city's charge of obstruction of official business against Ferrone, our review of the record reveals conflicting testimony as to who made that call. Even after construing the evidence in a light most favorable to the prosecution, it shows that Ferrone told Officer O'Grady that he would not bring Heather to the police station and that he would file a lawsuit against the police for their presence in his home. We recognize that at the time of this phone conversation, Ferrone had physical custody of Heather pursuant to the authorization of Laurie Campbell, her legal custodian, and therefore the officer's duty at the time consisted at most of persuading Ferrone to cooperate with the police in their efforts to locate Heather. We further note that Officer O'Grady could have terminated the phone call by hanging up to avoid having the obscenities allegedly hurled at him. Thus, based on our review of the record and the case law, we have concluded that although the statements made to Officer O'Grady may have evidenced uncooperative conduct, such conduct in this case does not rise to the level of an act hampering performance of official police duties. See, also, Houston v. Hill (1987),482 U.S. 451, 561 (the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.) Accordingly, the evidence presented by the city is insufficient to support Ferrone's guilt of obstruction of official business. The court, therefore, erred in not granting his Crim. R. 29 motion for acquittal.
Our decisions here render the remaining assignments of error moot. See App.R. 12(A)(1)(c).
Accordingly, the judgments of conviction are vacated and the appellants are discharged.
It is ordered that appellants recover of appellee their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Parma Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, P.J. and COLLEEN CONWAY COONEY, J. CONCUR.