JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Dario Williams, a/k/a Damon Wick, appeals from the judgment of the Cuyahoga County Common Pleas Court, entered after a jury verdict, finding him guilty of obstructing official business and tampering with evidence.
 {¶ 2} The record reflects that the Cuyahoga County Grand Jury indicted Williams in August 2002 on one count of drug possession, in violation of R.C. 2925.11; one count of obstructing official business, in violation of R.C. 2921.31; and one count of tampering with evidence, in violation of R.C. 2921.12.
 {¶ 3} Prior to trial, Williams filed a motion to suppress and the trial court heard testimony regarding his motion. At the suppression hearing, Cleveland police officer Eric Roberts testified that he had made numerous arrests for illegal drug activity in the area of East 116th Street and Continental Avenue in Cleveland According to Roberts, it is common for the drug dealers to try to swallow the illegal drugs they are carrying when they spot the police. The practice is referred to as "cupping."
 {¶ 4} Roberts testified that at approximately 5:30 p.m. on July 19, 2002, he and his partner were patrolling in the area of East 116th and Continental when they observed Williams, who was sitting in a chair on the sidewalk in front of an apartment, engage in a hand-to-hand transaction with a female. In light of his experience, Roberts believed he had witnessed a drug transaction. He stopped the patrol car and ordered Williams over to the vehicle, at which time Williams "stood up, placed something in his mouth and took off running."
 {¶ 5} Roberts gave chase and eventually caught Williams on East 116th Street, as he ran through the traffic. According to Roberts, as he handcuffed Williams, he saw him "chewing rapidly," trying to swallow something. The officers brought Williams to his feet and to the rear of the zone car, where they ordered him to open his mouth. When Williams refused to do so, the officers held his head back and got his mouth open, at which time they observed suspected crack cocaine residue in his mouth.
 {¶ 6} Roberts testified that he and his partner were concerned about Williams because they were aware that individuals can die from swallowing crack cocaine. The officers were also concerned that Williams was destroying evidence.
 {¶ 7} When EMS personnel arrived on the scene, Williams became very combative, so the officers transported him to the hospital in their zone car. According to Roberts, when Williams found out that he was being transported to the hospital to get his stomach pumped, he became even more violent.
 {¶ 8} Roberts testified that, at the hospital, Williams tried to kick two nurses and several security officers. Dr. Leslie Klabbatz, the emergency room doctor who treated Williams, finally administered a sedative to him because he was so violent.
 {¶ 9} Dr. Klabbatz testified that during the course of her emergency room work, she has often encountered patients who have ingested harmful substances. According to Dr. Klabbatz, the normal procedure performed on someone who is believed to have ingested a harmful substance is to insert a tube down the individual's throat, flush out his or her stomach with a gastric lavage and then obtain a urinalysis. If an individual thought to have ingested a harmful substance is uncooperative, the patient is sedated before the procedure is performed.
 {¶ 10} Dr. Klabbatz testified that because Williams was so combative, she gave him a sedative, performed the procedure described above, and then inserted a catheter into his bladder to obtain a urine specimen. According to Dr. Klabbatz, the urinalysis was positive for cocaine and marijuana and white pill fragments were recovered from the gastric lavage.
 {¶ 11} The trial court denied Williams' motion to suppress and trial proceeded. In addition to Officer Roberts and Dr. Klabbatz, Cleveland police officer Richard Rusnak testified at trial. Rusnak testified that on July 19, 2002, he and his partner responded to a radio broadcast regarding a foot chase involving a male with drugs. By the time Rusnak and his partner arrived on the scene, Williams had been apprehended and handcuffed. Rusnak testified that Williams was "on the ground chewing something" when he and his partner arrived. Rusnak testified further that he has made many drug arrests involving crack cocaine and recognized the substance in Williams' mouth as crack cocaine. According to Rusnak, Williams "kept trying to shut his mouth and swallow" the suspected crack. Rusnak testified that he ordered one of the officers on the scene to call EMS for Williams because "basically they can die from it if they swallow too much of it or their stomach blows up." Williams was too combative for the EMS personnel, however, so the police transported him to the hospital.
 {¶ 12} The jury found Williams not guilty of drug possession, but guilty of obstructing official business and tampering with evidence. The trial court sentenced him to nine months incarceration on the obstructing official business count and three years on the tampering with evidence count, to be served concurrently.
 MOTION TO SUPPRESS {¶ 13} In his first assignment of error, Williams contends that the results of the stomach pumping procedure should have been excluded as the product of an unlawful search and seizure in violation of the Fourth and Fourteenth Amendments. Williams contends there was no probable cause to stop him and the method of the search, i.e., stomach pumping against his will, was an "unreasonable" search and seizure.
 {¶ 14} Our standard for review of a trial court's judgment regarding a motion to suppress was set forth by this court inState v. Curry (1994), 95 Ohio App.3d 93, as follows:
 {¶ 15} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard." (Citations omitted.)
 {¶ 16} A police officer may make a brief, warrantless, investigatory stop of an individual where the officer reasonably suspects that the individual is or has been involved in criminal activity. Terry v. Ohio (1968), 392 U.S. 1. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. State v.Andrews (1991), 57 Ohio St.3d 86, citing Terry, supra. Whether an investigatory stop is reasonable depends upon the totality of circumstances surrounding the incident. State v. Williams
(1990), 51 Ohio St.3d 58, 60.
 {¶ 17} Applying these principles, we conclude that the investigatory stop of Williams was reasonable. Williams was observed engaging in a hand-to-hand transaction typical of drug dealing in an area known for illegal drug activity. Moreover, when the officers ordered him to the vehicle, he stood up, put something in his mouth and took off running. On these facts, the initial stop was warranted.
 {¶ 18} A search and seizure will violate one's Fourth Amendment rights, however, if the means of the search and seizure "were not reasonably related in scope to the justification for their initiation." Terry, 392 U.S. at 29. Williams contends that it was unreasonable for the police to transport him to the hospital against his will and for the doctor to pump his stomach over his objections.
 {¶ 19} Williams directs us to Rochin v. California (1952),342 U.S. 165, one of the prominent cases on intrusive searches. In Rochin, two police officers broke into the apartment of a suspected drug dealer and, after seeing him swallow two capsules, jumped on him and attempted to extract the capsules. When their efforts failed, the officers handcuffed Rochin and took him to a hospital. At the officers' direction, a physician forced an emetic solution through a feeding tube into Rochin's stomach, causing him to vomit the capsules. Rochin moved to suppress that evidence, but his motion was denied and he was convicted. On appeal, the United States Supreme Court reversed Rochin's conviction, finding that:
 {¶ 20} "This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents — this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and screw to permit of constitutional differentiation."
 {¶ 21} Rochin is not dispositive, however. After Rochin,
the United States Supreme Court decided Schmerber v. California
(1966), 384 U.S. 757, in which a police officer ordered an individual suspected of driving while intoxicated to submit to a blood test at the hospital where he was being treated for injuries sustained in an automobile collision. The Supreme Court noted that "the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." Id. at 768. Finding no Fourth Amendment violation, the court set forth several criteria to be considered in determining the reasonableness of an intrusive search: 1) the government must have a clear indication that incriminating evidence will be found; 2) the police officers must have a warrant, or, there must be exigent circumstances, such as the imminent destruction of evidence, to excuse the warrant requirement; and 3) the method used to extract the evidence must be reasonable and must be performed in a reasonable manner.State v. Victor (1991), 76 Ohio App.3d 372, 377, citingSchmerber, 384 U.S. at 770-772.
 {¶ 22} Subsequently, the United States Supreme Court decidedWinston v. Lee (1985), 470 U.S. 753, in which the Commonwealth of Virginia sought an order compelling a suspect to undergo surgery to remove a bullet from his chest. The victim of an attempted robbery had been wounded, but shot at his assailant. At the hospital, the victim recognized the suspect, who was also wounded, as his assailant. The state argued that the surgery to remove the bullet would provide evidence of the suspect's guilt or innocence. The Supreme Court held that the surgery would violate the suspect's right to be secure in his person, however, and the search would be unreasonable under the Fourth Amendment. The Supreme Court noted that the reasonableness of intrusive searches depends on a case by case approach, in which the individual's interests in privacy and security are weighed against society's interests in obtaining the evidence. The Court also noted that Schmerber provides the appropriate framework of analysis for such cases.
 {¶ 23} Applying the Schmerber factors to the facts of this case, it is apparent that the pumping of Williams' stomach was a lawful search and seizure. First, the officers observed Williams in an area known for illegal drug activity engage in a hand-to-hand transaction indicative of drug activity. When he saw the officers, he put whatever was in his hand in his mouth and then ran away. This behavior was a "clear indication" to the officers that Williams had secreted drugs in his mouth. Moreover, it was reasonable for the officers to conclude that Williams' life could be in jeopardy after they observed crack cocaine in his mouth and saw him trying to chew it and swallow it. Furthermore, Williams was destroying the evidence necessary to convict him of drug possession. Accordingly, this case falls within the exigent circumstances exception to the warrant requirement.
 {¶ 24} Finally, it is apparent that the method and manner of the search were not unreasonable. The facts indicate that a physician administered Williams' medical treatment in a hospital setting, according to accepted medical procedures. In Victor,
supra at 382, (Blackmon, J., dissenting), this court specifically recognized that stomach pumping by a physician in a hospital is a reasonable search:
 {¶ 25} "In Schmerber, the United States Supreme Court expressed an acceptance of a search conducted in a reasonable manner by a physician. The physician is certainly more qualified than a police officer to determine the extent to which a procedure is life threatening.
 {¶ 26} "Assuming that [a defendant] swallowed the cocaine, if the drugs were packaged in such a way as to be impervious to intestinal processes, the physician would certainly be in a position to pump the stomach of the [defendant], which is a reasonable medical procedure less traumatic than the forced emetic in Rochin. Again, this is the kind of conduct thatSchmerber finds more reasonable because it is done in the confines of a hospital with appropriate medical supervision."
 {¶ 27} Williams' violent objection to the stomach pumping, and the fact that he had to be sedated to accomplish the procedure, do not make the search unlawful. In Schmerber,
supra, the petitioner argued that the withdrawal of his blood, despite his refusal to consent to the test, was unconstitutional. The Supreme Court rejected this argument and found the search lawful because the blood test was a reasonable test under the circumstances and was conducted in a reasonable manner. In light of the reasonableness of the test, the Supreme Court found the petitioner's objection to the test of no consequence:
 {¶ 28} "We `cannot see that it should make any difference whether one states unequivocally that he objects or resorts to physical violence in protest or is in such condition that he is unable to protest.' It would be a different case if the police initiated the violence, refused to respect a reasonable request to undergo a different form of testing, or responded to resistance with inappropriate force." Id. at 760, quotingBreithaupt v. Abram (1957), 352 U.S. 432, 441 (Warren, C.J., dissenting).
 {¶ 29} Here, as discussed above, the stomach pumping procedure performed on Williams was reasonable under the circumstances. Moreover, the record reflects that Williams initiated the violence at the scene and continued to act violently at the hospital. There is nothing in the record to indicate that the police, nurses or doctors responded to his resistance with inappropriate force. Furthermore, the record reflects that although stomach pumping can be performed without sedating the patient, Williams' continued combative behavior forced the doctor to administer a sedative in order to safely perform the procedure.
 {¶ 30} On the facts of this case, we hold that the means and procedures employed by the police complied with the Fourth Amendment standards of reasonableness. Accordingly, the trial court did not err in denying Williams' motion to suppress.
 {¶ 31} Appellant's first assignment of error is overruled.
 SUFFICIENCY OF THE EVIDENCE {¶ 32} In his second assignment of error, Williams contends that the evidence was insufficient to support his convictions for obstructing justice and tampering with evidence.
 {¶ 33} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 34} R.C. 2921.31, regarding obstructing official business, provides that:
 {¶ 35} "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 36} Obstructing official business, in violation of R.C.2921.31, is established where there is both an illegal act which quickens the duty of the police officer to enforce the law, and interference with intent to impede that enforcement. GarfieldHts. v. Simpson (1992), 82 Ohio App.3d 286, 291, citingWarrensville Hts. v. Watson (1976), 50 Ohio App.2d 21, 15. Police officers are "public officials" within the ambit of the statute. Dayton v. Peterson (1978), 56 Ohio Misc. 12.
 {¶ 37} Here, the State presented sufficient evidence from which a reasonable finder of fact could have found all of the elements of obstructing official business proven beyond a reasonable doubt. First, as discussed above, in light of Williams' suspicious drug activity, the officers had reasonable suspicion sufficient to briefly detain him as part of a warrantless, investigatory stop under Terry.
 {¶ 38} Furthermore, Williams was not privileged to run from the police officers after being ordered to stop. "Privilege" in the context of R.C. 2921.31 refers to a positive grant of authority entitling one to deliberately obstruct or interfere with a police officer performing his lawful duty. State v.Stayton (1998), 126 Ohio App.3d 158, 163. The burden of proof is on the defendant to establish a privilege. State v. Foster
(Sept. 17, 1997), Seneca App. No. 13-97-09. Williams failed to identify and establish any privilege, however, and we ascertain no authority entitling him to deliberately obstruct or interfere with the police officers who were attempting to effectuate a lawful Terry stop. Accordingly, his acts were not privileged. Finally, the State presented sufficient evidence to demonstrate that Williams acted with an intent to impede the officers' performance and did, in fact, hamper or impede their performance. Officer Roberts testified that he chased Williams for several minutes before apprehending him. He testified further that as he chased Williams onto East 116th Street, cars had to swerve around him to avoid hitting him, thereby putting his safety in jeopardy. Furthermore, the State presented evidence that instead of complying with the officers' repeated orders to open his mouth, Williams chewed and swallowed the drugs, forcing the police to transport him to the hospital, where his stomach was pumped.
 {¶ 39} Construing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found all of the elements of obstructing official business proven beyond a reasonable doubt.
 {¶ 40} With respect to tampering with evidence, R.C.2921.12(A) provides that:
 {¶ 41} "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * *:
 {¶ 42} "(1) Alter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."
 {¶ 43} On this record, the State presented sufficient evidence from which a reasonable factfinder could have found the elements of tampering with evidence proven beyond a reasonable doubt. Williams was obviously aware that the police wanted to investigate him; when the officers stopped their car and ordered him over to the vehicle, he took off running. Furthermore, Officer Roberts testified that he observed Williams put something in his mouth before he started running and Officers Roberts and Rusnak both testified that when they finally caught Williams, they observed him chewing and trying to swallow something. They testified further that when they were able to get Williams' mouth open, they observed crack cocaine particles in his mouth. On this evidence, a reasonable fact finder could have concluded that Williams knew that an official investigation into his drug activity was in progress and that he altered or destroyed the evidence of that activity with the purpose to impede the investigation.
 {¶ 44} Appellant's second assignment of error is therefore overruled.
 MANIFEST WEIGHT OF THE EVIDENCE {¶ 45} In his third assignment of error, Williams contends that his convictions were against the manifest weight of the evidence.
 {¶ 46} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v.Thompkins (1997), 78 Ohio St.3d 380, 390. When a defendant asserts that his or her conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 47} Here, although Williams argues that "the jury simply lost its way as to the convictions," he offers no evidence or argument to support this claim. After reviewing the entire record, weighing the evidence and considering the credibility of the witnesses, we are not persuaded that the jury lost its way and created such a miscarriage of justice that Williams' convictions must be reversed.
 {¶ 48} Appellant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., Concurs.
 Sweeney, P.J., Concurs with Separate Concurring Opinion.