[Cite as *State v. Wilson*, 2011-Ohio-6886.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 96627

STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

DEONTE WILSON

DEFENDANT-APPELLANT

JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-543141 and CR-543159

BEFORE:    Blackmon, P.J., Celebrezze, J., and Rocco, J.

RELEASED AND JOURNALIZED:     December 29, 2011

ATTORNEY FOR APPELLANT

Thomas A. Rein
526 Superior Avenue, East
Leader Building, Suite 940
Cleveland, Ohio 44114

ATTORNEYS FOR APPELLEE

William D. Mason
Cuyahoga County Prosecutor

Norman Schroth
Kristin M. Karkutt
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, P.J.:

{¶ 1}   Appellant Deonte Wilson appeals his convictions and assigns the following errors for our review:

> "I. The trial court erred in denying appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence to sustain a conviction."

> "II.   Appellant's convictions were against the manifest weight of the evidence."

{¶ 2} Having reviewed the record and pertinent law, we affirm Wilson's convictions. The apposite facts follow.

{¶ 3} On October 21, 2010, a Cuyahoga County Grand Jury indicted Wilson in Case No. CR-543159 on one count of domestic violence, with a prior conviction specification. Additionally, the grand jury indicted Wilson for carrying a concealed weapon, having weapons while under disability, aggravated menacing, and obstructing official business. Seven days later, the grand jury indicted Wilson in Case No. CR-543141 on one count of domestic violence and two counts of endangering children.

{¶ 4} At the arraignment on the two separate cases held October 26, 2010, and November 1, 2010, respectively, Wilson pleaded not guilty to the charges. Several pretrials were subsequently conducted and on January 31, 2011, Wilson filed a motion to consolidate both cases, which the trial court granted.

{¶ 5} On March 2, 2011, Wilson waived his right to a jury trial on the charges of having weapons while under disability and aggravated menacing. A jury trial commenced the same day on the remaining charges.

Jury Trial

{¶ 6} At trial, the state presented the testimony of Shanika Workman. Wilson is the father of Workman's two children, ages five and one, respectively. On September 17, 2010, Workman and Wilson had an argument and he pushed her against a wall, which caused injury to her arm and soreness. Afterwards, Wilson suggested they go for a walk;

she agreed because she was scared, so they left the house. As they walked, Wilson continued to scream at her and threatened to rob her.

{¶ 7} They eventually stopped at an enclosed bus stop on East 85th Street and Superior Avenue, where Workman placed her purse on the bench; Wilson continued to scream at her and ask for money. When she picked up her purse, she immediately noticed it was heavier; she panicked and ran across the street to a beauty salon where her sister had once worked. She looked in her purse and discovered a gun. She asked the salon manager to call the police. When the police arrived, Workman turned over the gun to the officers.

{¶ 8} After the incident, she and her children went to live with her sister. On October 11, 2010, Workman took their children to visit Wilson at the home they once shared. Shortly after they arrived, Wilson called the clerk of courts and discovered that there was a warrant for his arrest.

{¶ 9} Upon learning of the warrant, Wilson became enraged and began screaming at Workman, which prompted her to run down the back stairwell. Wilson followed her, pushed her, caused her to fall and hit her eye on the stairs, which resulted in blackness around her eye. She placed a call to her sister and requested that she call the police. The police arrived shortly thereafter and arrested Wilson.

{¶ 10} Police Officer Orville Taylor testified that on September 17, 2010, he and other officers responded to a beauty salon on Superior Avenue based on a report that a

male was threatening a female with a gun. When he approached the salon, he observed a male walking away from the beauty salon and disappearing around the corner. Officers Bryant and Sheehan pursued Wilson and apprehended him after Wilson fell into a nearby creek.

{¶ 11} Officer Mitchell Sheehan verified that he and Officer Bryant pursued Wilson. Officer Sheehan stated that after Wilson fell into the creek, he ordered him to put his hands up and come out of the creek. Wilson refused to show his hands and stated: "Shoot me bitches, I have a gun."

{¶ 12} On October 11, 2010, officers Andrew Gibbs and Brian Crisman responded to Wilson's residence because of a report of domestic violence in progress. They arrived to the sound of screaming and yelling emanating from behind the closed door of the third floor unit. Officer Gibbs could hear Wilson repeatedly yelling: "I'm going to fucking kill you," which prompted them to break down the door and enter the unit.

{¶ 13} Once inside, they observed Wilson standing in the doorway leading to the fire escape. Upon seeing the officers, Wilson immediately went out onto the fire escape, ignored their orders to put his hands up, and then dared them to shoot him. Wilson then jumped to another section of the fire escape, continued to disobey their orders, but eventually complied after they talked with him for a short while. The children were present and witnessed the event.

{¶ 14} The jury found Wilson guilty of domestic violence with the furthermore specification and the counts of endangering children in Case No. CR-543141. In Case No. CR-543159, the jury found Wilson not guilty of domestic violence and carrying a concealed weapon, but guilty of aggravated menacing. In addition, regarding the counts tried to the bench, the trial court found Wilson guilty of having weapons while under disability and obstructing official business.

{¶ 15} In Case No. CR-543141, the trial court sentenced Wilson to four years in prison for domestic violence and to time served for child endangering. In Case No. CR-543159, the trial court sentenced Wilson to four years in prison to be served concurrent to Case No. CR-543141. Wilson now appeals.

<u>Motion for Acquittal</u>

{¶ 16} In the first assigned error, Wilson argues the trial court erred when it denied his motion for acquittal because there was insufficient evidence to support his convictions. We disagree.

{¶ 17} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of evidence review require the same analysis. *State v. Mitchell*, Cuyahoga App. No. 95095, 2011-Ohio-1241, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

{¶ 18} In analyzing the sufficiency issue, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *State v. Carter* (1995), 72 Ohio St.3d 545, 651 N.E.2d 965.

{¶ 19} The evidence was sufficient to convict Wilson of the crimes charged. Regarding domestic violence,  R.C. 2919.25 states in pertinent part:

"(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

"* * *

"(F) As used in this section * * * of the Revised Code:

"(1) 'Family or household member' means any of the following:

"(a) Any of the following who is residing or has resided with the offender:

"(I) A spouse, a person living as a spouse, or a former spouse of the offender; * * *."

{¶ 20} In the consolidated trial, the testimony was uncontradicted that Wilson and Workman were family or household members as the terms are defined above.  The parties had two children together and resided together when the first incident took place on September 17, 2010, and had resided together when the second incident took place.

The testimony at trial established that Wilson knowingly caused physical harm to Workman.

{¶ 21} In the first incident, Wilson pushed Workman against a wall, which caused her to hurt her arm. In the second incident, Wilson pushed Workman down the stairs causing her to hit her eye on the stairs. Pictures of Workman's blackened eye were presented at trial to corroborate her claim. The foregoing evidence was sufficient to support the domestic violence conviction. As such, the trial court properly denied Wilson's motion for acquittal.

{¶ 22} Regarding aggravated menacing, R.C. 2903.21 states in pertinent part:

"(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

{¶ 23} The testimony at trial established that in the first incident, Wilson was threatening Workman in the house and as they walked along the road. Wilson threatened to rob Workman, who testified she felt scared. When she discovered how heavy her purse had become and discovered the gun in her purse, she sought refuge in the beauty salon. Based on Workman's testimony, Wilson was the only person who had access to her purse.

{¶ 24} In the second incident, Officer Gibbs testified that he could hear Wilson repeatedly yelling: "I'm going to fucking kill you," which prompted them to break down the door and enter the unit. The foregoing evidence was sufficient to support the

aggravated menacing conviction. As such, the trial court properly denied Wilson's motion for acquittal.

{¶ 25} Regarding child endangering, to R.C. 2919.22 states in pertinent part:

"(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.

* * *"

{¶ 26} As previously noted, Officer Gibbs heard Wilson threatening to kill Workman when they reported to the residence. Officer Gibbs could also hear cries and screams of the children as he stood outside the door. The foregoing evidence was sufficient to support the child endangering conviction. As such, the trial court properly denied Wilson's motion for acquittal.

{¶ 27} Regarding having weapons while under disability, R.C. 2923.13 states in pertinent part:

"(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

"(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence."

{¶ 28} We note that it was stipulated that Wilson had two prior convictions for domestic violence, thus was not permitted to have a firearm. At trial, the testimony

established that Workman discovered a gun in her purse after she and Wilson argued at the bus stop. Workman testified that the gun did not belong to her, that it was not in her purse prior to them arriving at the bus stop, and that they were alone. Circumstantial evidence is given the same weight as direct evidence. *State v. Anderson*, Cuyahoga App. No. 92879, 2010-Ohio-1663. Thus, sufficient evidence was presented to support the logical conclusion that Wilson was the only person that could have placed the gun in Workman's purse.

{¶ 29} Moreover, at trial, a tape of a recorded telephone conversation between Wilson and Workman was played. Workman testified as follows after the tape was played:

"Q. Did you hear on that tape where he said - - where you heard the defendant say, 'everything is not true'?

"A. Uh-huh, yeah.

"Q. What did he mean by that?

"A. Yes, like to say that nothing happened, say everything is a lie

"* * *

"Q. When he said 'that was yours,' did you have an understanding as to what he was talking about?

"A. The gun.

"Q. The gun. And when he said 'that was yours,' you said 'I know,' right?

"A. To make it seem like it was mine, but it's really not my gun.

"Q.    It wasn't yours?

"A.    No ma'am.   I'm scared of guns.   I don't like touching them.   I never touched a gun a day of my life.   I guess he wanted to blame everything on me."

Tr. 301-302.

{¶ 30} The above exchange established that Wilson wanted Workman to testify that the gun she discovered in her purse belonged to her, when in fact it belonged to him. The state presented sufficient evidence to sustain the conviction.   As such, the trial court properly denied Wilson's motion for acquittal.

{¶ 31} Regarding obstructing official business,   R.C. 2921.31 states in pertinent part:

"(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶ 32} In the incidents forming the basis of the consolidated trial, the evidence established that Wilson fled from the police.   In the first incident, Wilson fled and was finally apprehended when he fell into a creek.   In the second incident, Wilson fled down the fire escape and proceeded to jump from one landing to the next.   In both incidents, Wilson dared the officers to shoot him, and in the first incident, he stated to the police that he had a gun.   Fleeing from the police is sufficient to support the instant charge. See *Warrensville Hts. v. Bobbitt* (Aug. 8, 1996), Cuyahoga App. No. 69946.   As such, the trial court properly denied Wilson's motion for acquittal.

**{¶ 33}** We conclude, the state presented sufficient evidence to support Wilson's convictions. Consequently, the trial court properly denied Wilson's motion for acquittal; accordingly, we overrule the first assigned error.

## Manifest Weight of Evidence

**{¶ 34}** In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> "The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."

**{¶ 35}** In this assigned error, Wilson argues the trier of fact lost its way as to the convictions. Specifically, Wilson argues the state presented conflicting and inconsistent testimonies, lacking in credibility. However, the determination of weight and credibility of the evidence is for the trier of fact. *State v. Chandler*, 10th Dist. No. 05AP-415,

2006-Ohio-2070, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimonies are credible. *State v. Williams*, 10th Dist. No. 02AP-35, 2002-Ohio-4503.

{¶ 36} Under *Wilson*, we sit as the thirteenth juror and determine whether we disagree with the trier of fact's resolution of the conflicting evidence.   In this case, the evidence supports the trier of fact's guilty verdicts.   Accordingly, we overrule the second assigned error.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
KENNETH A. ROCCO, J., CONCUR