[Cite as *State v. Vargas*, 2012-Ohio-2768.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97377**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# VERKO VARGAS

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-552581

**BEFORE:** Jones, J., Blackmon, A.J., and Keough, J.

**RELEASED AND JOURNALIZED:** June 21, 2012

**ATTORNEY FOR APPELLANT**

Christopher R. Fortunato
13363 Madison Avenue
Lakewood, Ohio 44107


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Justin S. Gould
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Verko Vargas, appeals his conviction for obstructing official business. We affirm.

{¶2} In 2011, Vargas was charged with one count each of theft of a motor vehicle and obstructing official business. The matter proceeded to a trial by jury at which the following pertinent evidence was presented.

{¶3} Aria Mondla-Dontarvon testified that she allowed her daughter, Edenike, to drive her car to work the evening of July 16, 2011. Vargas, who was dating Edenike at the time, rode with her to work. Edenike went inside to work her shift and left the keys with Vargas, who often waited for her while she worked.

{¶4} When her shift ended the next morning, Edenike went outside to discover that her mother's car and Vargas were missing. Aria and Edenike each testified that Vargas did not have permission to use the car.

{¶5} Kimberly Wilson testified that she was driving on Pearl Road at about 3:45 a.m. on July 17, 2011, when a blue car passed her at a high rate of speed. She called 911. Minutes later she saw the car again, crashed into a telephone pole. She saw the driver, later identified as Vargas, standing outside the car. Wilson testified that she drove up to Vargas to see if he was injured, but he ran away. The police arrived and Wilson told them that Vargas had run behind the bank.

{¶6} Strongsville police officer Michael Mendise testified that he responded to the scene where Wilson informed him that Vargas had run behind the bank, which is perched

on a steep ravine. According to Patrolman Mendise, he could smell an odor of alcohol as he approached a set of steps behind the bank; he then saw Vargas hiding under the stairs. Patrolman Mendise ordered Vargas to put his hands up and Vargas complied. Vargas then began to "scoot" toward the edge of the ravine. Patrolman Mendise ordered Vargas to move toward him and away from the cliff, warning him "don't go forward or you're going to get hurt."

{¶7} Vargas went over the edge of the cliff and the officers lost sight of him. The officers heard noises that sounded like Vargas falling down the side of the cliff and then heard him splash into the river at the bottom of the ravine. The officers immediately proceeded down the cliff because they were concerned about Vargas's safety. Patrolman Mendise testified that he "fell, slid, and tripped" down the steep ravine, describing the descent as "disastrous."

{¶8} Vargas began to wade and swim in the river. The police finally apprehended him and pulled him to safety. A rescuer with the Southwest Emergency Response Team ("SERT") repelled down the side of the ravine to assess Vargas's condition. Eventually, the rescuing officers and Vargas had to be pulled up the side of the cliff by ropes. The entire incident lasted three hours and included multiple members of the Strongsville Police and Fire Departments, SERT, and Cleveland Metroparks rangers.

{¶9} The jury convicted Vargas of obstructing official business but acquitted him of theft. The trial court sentenced him to ten months in prison. It is from this

conviction that Vargas now appeals, raising three assignments of error for our review; the assigned errors will be discussed together.

I.    The appellant's conviction should be reversed when there was insufficient evidence to convict the appellant of obstructing official business.

II.    The trial court's verdict was against the manifest weight of the evidence.

III.    The trial court erred when it should have granted a judgment of acquittal under Crim.R. 29.

Law and Analysis

{¶10} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of evidence review require the same analysis. *State v. Mitchell*, 8th Dist. No. 95095, 2011-Ohio-1241, ¶ 18, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386. But the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.

{¶11} The role of an appellate court presented with a sufficiency of the evidence argument is delineated as follows:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶12} On the other hand, the weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Robinson*, 8th Dist. No. 96493, 2011-Ohio-6077, ¶ 14, citing, *State v. Brindley*, 10th Dist. No. 01AP-926, 2002-Ohio-2425, ¶ 16. When presented with a challenge to the manifest weight of the evidence, an appellate court, after

> reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at *id.*

{¶13} Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *Cleveland v. Kirkpatrick*, 8th Dist. No. 94950, 2011-Ohio-2257, ¶ 26, citing *State v. Braxton*, 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15. "[T]hus, a determination that a conviction is supported by the

weight of the evidence will also be dispositive of the issue of sufficiency." *Kirkpatrick* at

*id.*

R.C. 2921.31 prohibits obstructing official business and provides:

(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

(B) Whoever violates this section is guilty of obstructing official business. Except as otherwise provided in this division, obstructing official business is a misdemeanor of the second degree. If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree.

**{¶14}** Vargas claims that the state failed to provide sufficient evidence to convict him of obstructing official business, and the trial court should have granted his Crim.R. 29 motion for acquittal, because running away from the police did not obstruct official business nor did he cause a risk of physical harm to anyone. He further claims that the conviction was against the manifest weight of the evidence because there was "no evidence of an illegal act."  We disagree.

**{¶15}** This court has found that obstructing official business is established where there is both an illegal act that quickens the duty of the police officer to enforce the law, and interference with intent to impede that enforcement.  *Garfield Hts. v. Simpson*, 82 Ohio App.3d 286, 291, 611 N.E.2d 892 (8th Dist.1992), citing *Warrensville Hts. v. Watson*, 50 Ohio App.2d 21, 361 N.E.2d 546 (8th Dist.1976).  Fleeing from pursuing police may be sufficient to sustain a conviction for obstructing official business.  In

*State v. Wilson*, 8th Dist. No. 96627, 2011-Ohio-6886, police officers responded to a beauty salon based on a report of a man with a gun. When the police arrived at the salon they saw the defendant walking away. A chase ensued and the police were able to apprehend the defendant after he fell into a creek. This court found that the defendant's decision to ignore police orders and flee was sufficient to show that he obstructed official business.

{¶16} In *State v. Williams*, 8th Dist. No. 89574, 2004-Ohio-4476, this court affirmed a conviction for obstructing official business when the defendant ignored police orders to stop and the police chased the defendant for several minutes before apprehending him. This court found that the fact that cars had to swerve around the defendant to avoid hitting him and the defendant swallowed evidence was sufficient to constitute obstructing official business. *Id*. at ¶ 38. In *Williams*, this court noted that the risk of physical harm the defendant caused was to himself.

{¶17} In this case, the police were investigating a single car accident in the middle of the night. Contrary to Vargas's assertion that he should have been free to walk away, Patrolman Mendise testified that he had a duty to investigate because Vargas had left the scene of an accident and the officer had to make sure he was not injured. Moreover, the officer smelled a strong odor of alcohol emanating from the area where he located Vargas. Vargas ignored the police order to stay away from the edge of the ravine. Once Vargas went over the side of the cliff and into the river, Patrolman Mendise testified that he heard Vargas struggling in the water "like [he] was choking." The

officers, who knew the terrain was dangerous, decided to follow Vargas over the cliff and into the river in order to rescue him.

{¶18} Sergeant John Hall testified that all but one officer on duty that night responded to the scene to assist in the pursuit and rescue. He further testified that it is an officer's duty at the scene of a car accident to investigate the accident and determine if there are any injuries, alcohol involved, take a report, etc.

{¶19} Based on these facts, the state presented sufficient evidence that the police were unable to complete their duties at the scene of the car accident because they had to chase, and then rescue Vargas.

{¶20} The state also presented sufficient evidence that Vargas's actions caused a risk of physical harm. The entire incident lasted approximately three hours and involved multiple facets of the city's safety forces. Patrolman Mendise and three other officers involved testified that Vargas put himself and the police, fire, and SERT at risk of harm. Liuetenant Harry Drennan of the Strongsville Fire Department and SERT testified that descending the side of the ravine without safety equipment, as the officers in this case did to pursue Vargas, presented a risk of injury to the officers. Liuetenant Drennan testified that while he was treating Vargas for any possible injuries, Vargas "slapped" or "hit" him hard enough to knock him off balance and into a patch of poison ivy. Moreover, Vargas, who had just been in a car accident, presented a risk of injury to himself as he traversed dangerous terrain in the middle of night trying to evade capture. After reviewing the entire record, weighing the evidence and considering the credibility of the

witnesses, we are not persuaded that the jury lost its way and created such a miscarriage of justice that Vargas's conviction must be reversed.

**{¶21}** Therefore, we find that the Vargas's conviction for obstructing official business was supported by sufficient evidence and was not against the manifest weight of the evidence.    Accordingly, the assignments of error are overruled.

**{¶22}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.    Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

PATRICIA ANN BLACKMON, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR