[Cite as *State v. Jackson*, 2012-Ohio-4278.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97743**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LAWRENCE B. JACKSON

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART, REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-554303

**BEFORE:** S. Gallagher, J., Stewart, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** September 20, 2012

**ATTORNEY FOR APPELLANT**

Gary Stroh
P.O. Box 110088
Cleveland, OH   44111


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Erin Stone
        Sherrie S. Royster
Assistant Prosecuting Attorneys
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH   44113

SEAN C. GALLAGHER, J.:

{¶1} Defendant-appellant Lawrence Jackson appeals from his convictions for drug possession, drug trafficking, obstructing official business, assault, escape, and possession of criminal tools. For the reasons stated herein, we affirm in part, reverse in part, and remand.

{¶2} In December 2010, Jeffrey Yasenchak was a detective in the Narcotics Unit of the Cleveland Police Department. An informant told the detective about a middle person he used in purchasing crack cocaine. Det. Yasenchak met the informant on December 21 at a discreet location where he fit him with a wire and provided him with money to purchase crack cocaine. The money was previously photocopied in case it was later recovered by the police. The informant called the middle person on a speaker phone in order for Det. Yasenchak to hear the conversation setting up a buy.

{¶3} After the call, Det. Yasenchak and several assisting detectives followed the informant to the middle person's house. The informant entered the house. Det. Yasenchak heard a male stating, "you would have to go to the west side to get the crack." He also heard over the wire the men counting the money. The informant then left the house and returned to Det. Yasenchak.

{¶4} The assisting detectives followed the middle person to a house on Riverside Avenue in Cleveland where the middle person entered the house. The middle person left

about five minutes later and returned to his house. About another minute later, the middle person called the informant and told him, "I got it, I'm good. Come on over."

{¶5} The informant retrieved the crack cocaine from the middle person and provided it to Det. Yasenchak. Det. Yasenchak never identified the middle person, the original target of the investigation.

{¶6} Det. Yasenchak thereafter set up surveillance at the Riverside house. On one occasion, he saw a large, tall black male and a female leave the house. On a separate occasion, Det. Yasenchak saw a Ford Contour in the driveway. He "ran" the temporary tag on the car, and learned it was registered to Jackson. When he "pulled" the driver's photo for the Ford, Det. Yasenchak recognized the owner as the man seen earlier leaving the Riverside house, that is, Jackson. The Ford's temporary tag, however, did not list the owner's address as the Riverside house. Yet on another occasion, Det. Yasenchak observed the middle person arrive at the house, enter it, and exit about two minutes later. Jackson followed the middle person out of the house and watched him drive away.

{¶7} On December 23, 2010, Det. Yasenchak instructed other members of the narcotics unit to conduct a "trash pull" at the Riverside house. They found the following signs of drug activity: 15 sandwich bags all with residue, some with corners cut off; balled up rubber gloves with residue; and paper towels used to dry crack, loaded with "crumbs." Instant testing on the plastic bags and "crumbs" came back positive for crack cocaine. Later lab results confirmed the positive test results. The trash pull offered no evidence of Jackson's use of the Riverside house as his address.

{¶8} Through available databases, Det. Yasenchak identified Tivanni Taylor as using the Riverside house as her address. She was the woman with Jackson when Det. Yasenchak first saw him. Jackson's brother also used the same address, but he was incarcerated during the time of Det. Yasenchak's investigation.

{¶9} Because of the controlled buy and the results of the trash pull, Det. Yasenchak obtained a search warrant for the Riverside house. Members of the SWAT team entered the house on December 28 at approximately 7:20 p.m. Detectives Yasenchak, Elbin Negron, Thomas Klamert, and Scott Moran entered the house and conducted a systematic search for drugs. Jackson was the only person in the house, and he was secured in the living room with "zip-ties," or plastic handcuffs.

{¶10} Yasenchak found a bag of crack cocaine on a glass end table in the living room. Detectives Klamert and Negron searched an open closet in the dining room where they found only male clothing, including some jackets. They also found shoes and a shoe box with personal papers and mail, including tax information. Items found in the shoe box included (1) some legal papers for Jackson dated March 2, 2010, September 1, 2010, and November 13, 2009, all with the Riverside address; (2) a May 2008 or 2009 cell phone bill; (3) some utility bills and other pieces of mail in Jackson's name; (4) a 2008 income tax packet for Jackson; and (5) a photo of Jackson. According to Det. Klamert, "I believe the cell phone, that's in Lawrence Jackson's name [is registered to] the address where we're at, * * * Riverside Avenue."

**{¶11}** Inside an extra large jacket found in the closet, Det. Klamert found a large bag of crack cocaine. Four to five smaller bags were inside the larger bag and contained crack rocks in varying sizes of 2.72, 2.78, 17.91, and 26.68 grams. Det. Klamert stated the size and shape of the bags and crack indicated they were intended for distribution. The size and shape of the crack also matched the interior of a Pyrex glass measuring cup found in the search, and used to prepare crack cocaine. Detectives Klamert and Negron also recovered from the closet floor a black digital scale with residue, later tested to be positive for crack cocaine. Packaging material and sandwich bags were also found on the dining room table.

**{¶12}** After discovering the drugs, Det. Negron alerted the other detectives by stating loudly, "bingo bingo." Jackson, who was still in the living room adjacent to the dining room, then stood up and crashed head first through a large window in the living room. He landed on the front porch, but his feet remained in the house. Det. Negron grabbed his legs and feet to get him back in the house. Meanwhile, Detectives Klamert and Moran went out to the porch to apprehend him. According to Det. Klamert, Jackson "was hysterical, he was trying to get away. He was flailing around. There was all kinds of broken glass that's [sic] on the porch. We were giving him commands to stop, he wasn't listening at all." Det. Moran finally used a taser to calm him, and the detectives were able to pull him up from the floor.

**{¶13}** As a result of the incident and search, Jackson was charged with one count of drug trafficking, two counts of drug possession, one count of obstructing official

business, one count of assault (against Det. Negron), one count of escape, and one count of possession of criminal tools. The drug trafficking, drug possession, and possession of criminal tools counts all included forfeiture specifications under R.C. 2941.1417(A).

{¶14} A jury trial commenced on November 15, 2011. Defense counsel moved for acquittal at the close of the state's case and that of the defense. The trial court denied the motions. The jury returned a guilty verdict on all counts of the indictment, including the forfeiture specifications.

{¶15} Jackson now appeals from his convictions, raising two assignments of error. First, he asserts the trial court erred when it denied his Crim.R. 29 motion because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions. Second, he asserts his convictions are against the manifest weight of the evidence. For the following reasons, we affirm in part and reverse and remand in part.

{¶16} When an appellate court reviews a claim of insufficient evidence, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. A motion for acquittal

under Crim.R. 29(A) is governed by the same standard used for determining whether a verdict is supported by sufficient evidence. *Id.*

**{¶17}** On the other hand, the weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Robinson*, 8th Dist. No. 96463, 2011-Ohio-6077, ¶ 14, citing *State v. Brindley*, 10th Dist. No. 01AP-926, 2002-Ohio-2425, ¶ 16. When presented with a challenge to the manifest weight of the evidence, an appellate court, after

> "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

*State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387.

**{¶18}** Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *Cleveland v. Kirkpatrick*, 8th Dist. No. 94950, 2011-Ohio-2257, ¶ 26, citing *State v. Braxton*, 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15. "'[T]hus, a determination that a conviction is supported by the

weight of the evidence will also be dispositive of the issue of sufficiency.'" *Kirkpatrick*, quoting *Braxton*, ¶ 15.

**{¶19}** Circumstantial evidence alone is sufficient to prove constructive possession. *Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492. Although the mere presence of an individual in the vicinity of illegal drugs is insufficient to establish the element of possession, if the evidence demonstrates that the defendant was able to exercise dominion or control over the drugs, the defendant may be convicted of possession. *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976); *State v. Haynes*, 25 Ohio St.2d 264, 267 N.E.2d 787 (1971). This court has specifically held that the discovery of readily accessible drugs in proximity to a person constitutes circumstantial evidence that the person was in constructive possession of the drugs. *State v. Pavlick*, 8th Dist. No. 81925, 2003-Ohio-6632, ¶ 17.

**{¶20}** Jackson primarily relies on this court's decision in *State v. Creighton*, 8th Dist. No. 95607, 2011-Ohio-5919, in arguing his drug trafficking and drug possession convictions are not supported by the evidence because he "was merely present at the location where the officers executed a search warrant." Jackson asserts there is insufficient evidence to establish he knew of or participated in knowingly packing, preparing for shipment or distribution, or distributing any controlled substance. Jackson also asserts there is insufficient evidence to show any connection between him and the crack cocaine recovered in the search, including the drugs removed from the man's jacket because the state failed to prove the jacket belonged to him.

{¶21} In *Creighton*, Creighton was arrested in his nephew's home for multiple offenses, including drug trafficking and drug possession. There were audio recordings relating to a controlled buy, but Creighton was not in them. There were no other ties to the home except a suitcase that contained some of Creighton's belongings, including a lease showing Creighton's residence elsewhere. Evidence indicated Creighton only spent the night at the nephew's home. The informant used by the police to conduct the controlled buy did not even know Creighton was in the house because Creighton was upstairs in the bathroom when the police found him.

{¶22} *Creighton* is easily distinguished on the facts presented to the trial court and jury in this case. Det. Yasenchak observed Jackson at the Riverside house on at least two occasions prior to December 28, the date of the search of the house. On one of these occasions, he saw Jackson follow the middle person out of the house. The dining room closet contained only men's clothing, including the jacket with the bag of crack cocaine in the pocket. The shoe box contained a number of documents, including items with the Riverside address listed as Jackson's address. The detectives found in the closet the shoe box, the digital scale with residue, and the Pyrex cup. They also found a bag containing crack cocaine on a table in the living room, and packaging materials, including plastic bags on the dining room table. All of these items, including the drugs, were in proximity to Jackson, circumstantial evidence that he was in constructive possession of them. *Pavlick*, 8th Dist. No. 81925, 2003-Ohio-6632. The foregoing establishes Jackson was not merely present in the Riverside house at the time of the

search.  *Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351; *Haynes*, 25 Ohio St.2d 264, 267 N.E.2d 787.

{¶23} Jackson also asserts the evidence does not support his conviction for obstructing official business under R.C. 2921.31(A).  He argues the act of jumping through the window does not prove he tried to obstruct, prevent, or interfere with the detectives' execution of the search warrant.

{¶24} R.C. 2921.31(A) provides the following:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

{¶25} Obstructing official business, in violation of R.C. 2921.31, is established where there is both an illegal act that quickens the duty of the police officer to enforce the law, and interference with intent to impede that enforcement.  *Garfield Hts. v. Simpson*, 82 Ohio App.3d 286, 291, 611 N.E.2d 892 (8th Dist.1992), citing *Warrensville Hts. v. Wason*, 50 Ohio App.2d 21, 25, 361 N.E.2d 546 (8th Dist.1976).  Police officers are "public officials" within the ambit of the statute.  R.C. 2921.01(A).  Fleeing from pursuing police may be sufficient to sustain a conviction for obstructing official business.  *State v. Vargas*, 8th Dist. No. 97377, 2012-Ohio-2768; *State v. Wilson*, 8th Dist. No. 96627, 2011-Ohio-6886.

{¶26} The state presented reliable evidence to demonstrate that Jackson acted with an intent to impede the detectives' performance and did, in fact, hamper or impede their

performance. Jackson's act of jumping through the window disrupted the search because it took the efforts of more than four detectives to get him under control, including one detective's use of a taser. This act also was Jackson's attempt to flee from the detectives. *Id*.

**{¶27}** Jackson next asserts the evidence does not support his assault conviction under R.C. 2903.13(A). He argues his kicks to Det. Negron's chest were not intended to harm the officer. Rather, they were merely incidental to his attempts to get up from the porch floor.

**{¶28}** R.C. 2903.13 states in pertinent part that "[n]o person shall knowingly cause or attempt to cause physical harm to another." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

> "'Knowingly' does not require the offender to have the specific intent to cause a certain result. That is the definition of 'purposely.' Instead, whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself."

*State v. Dixon*, 8th Dist. No. 82951, 2004-Ohio-2406, ¶ 16, quoting *State v. Huff*, 145 Ohio App.3d 555, 763 N.E.2d 695 (1st Dist.2001).

**{¶29}** Det. Negron testified Jackson intentionally kicked him three times in the chest while he was trying to break free from the detective's grip. While his intent may have been to break free, Jackson kicked Det. Negron in the process. These actions are easily distinguished from those in *State v. Fussell*, 8th Dist. No. 95906, 2011-Ohio-4815,

a case cited by Jackson. In *Fussell*, the testimony failed to show Fussell caused or attempted to cause physical harm to an arresting officer. *Id*. at ¶ 15.

**{¶30}** On his claim that the evidence does not support his escape conviction, Jackson argues he was secured, but not under arrest, at the time of the search and his going through the window. The state, therefore, failed to prove the element of detention required under R.C. 2921.34(A)(1).

**{¶31}** Jackson was charged with escape in violation of R.C. 2921.34(A)(1), which provides, in pertinent part, "[n]o person, knowing the person is under detention * * * or being reckless in that regard, shall purposely break or attempt to break the detention." Although the escape statute is hardly a model of clarity, pursuant to R.C. 2921.01(E), "detention" includes, among other things, being under "arrest." *State v. Carson*, 8th Dist. No. 90975, 2009-Ohio-2027, ¶ 20.

**{¶32}** R.C. 2935.01, even though it contains definitions of many of the critical terms found in R.C. Chapter 2935, the Ohio arrest statute, does not define "arrest." *In re M.D.*, 12th Dist. No. CA2003-12-038, 2004-Ohio-5904, ¶ 15. However, according to the Ohio Supreme Court, an arrest occurs when the following four requisite elements are met: "(1) an intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *State v. Barker*, 53 Ohio St.2d 135, 139, 372 N.E.2d 1324 (1978), paragraph one of the syllabus.

**{¶33}** The offenses of resisting arrest and escape are separate and distinct. Arrest is a criminal process and has been adequately defined in *Barker*. "*Until the arrest is effected* one who resists is guilty of R.C. 2921.33 [resisting arrest], but after that time he would be in 'custody,' 'detained' or 'confined.' If he should break the detention, he would be guilty of violating R.C. 2921.34 [escape]." (Emphasis added.) *State v. Cross*, 58 Ohio St.2d 482, 489, 391 N.E.2d 319 (1979).

**{¶34}** Here, detectives secured Jackson's wrists behind his back while other detectives searched the house. The state contends,

> Given that there was cocaine in plain view on the table upon making entry to * * * Riverside, detectives certainly had an *intent to arrest* [Jackson] * * * [and] [t]here is no clearer indication to a *potential* defendant that he is *likely about to be arrested* that [sic] having his hands cuffed behind his back.

(Emphasis added.) While the state may not have meant to reflect the detectives had the *intent to arrest* Jackson, and Jackson should have known he was a *potential* defendant and *likely to be arrested*, we conclude the evidence does not support his conviction for escape because he was not under arrest at the time he jumped through the window.

**{¶35}** An arrest, in the technical as well as the common sense, signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime. A formal arrest, therefore, is not necessarily an instantaneous event but, rather, is a process beginning with the seizure of a person, which can encompass acts necessary to effect the formal charging of a crime. Therefore, before a defendant is formally charged, temporal and spatial limits are factual issues from

which the trier of fact determines whether the arrest is complete. *State v. Turic,* 2d Dist. No. 2010 CA 56, 2011-Ohio-6713. The scenario here may well have supported an arrest, and hence a subsequent escape charge, had the record been so developed. The state offered no evidence of an arrest as the testimony indicated the police secured Jackson's wrists solely for safety concerns. We are constrained by the record before us and as such must reverse Jackson's conviction for escape.

{¶36} Finally, Jackson asserts the evidence does not support his conviction for possession of criminal tools under R.C. 2923.24(A). He argues the detectives removed a number of items from the Riverside house, but the state failed to show to whom they belonged, who bought them, or how they were used in a criminal manner and by whom.

{¶37} In addition to the cash, drugs, scale, Pyrex measuring cup, and Jackson's personal items, the detectives also removed two televisions, a cell phone, a laptop computer, and a camera from the home. They also found $135 on Jackson, but it was not money used in any controlled buy.

{¶38} R.C. 2923.24 states, "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." R.C. 2925.01(K) defines possession as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. *Haynes*, 25 Ohio St.2d 264, 269-270, 267 N.E.2d 787. Constructive possession exists when an individual knowingly exercises dominion and

control over an object, even though that object may not be within the individual's immediate physical possession. *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus.

{¶39} The detectives found in the dining room closet the shoe box with Jackson's personal papers, the digital scale with residue, and the Pyrex cup. They also found multiple bags of crack cocaine in the pocket of a man's jacket and a bag with crack cocaine on a table in the living room. Packaging materials, including plastic bags, were found on the dining room table. While the state may not have proven Jackson's possession of criminal tools by evidence of two televisions, a cell phone, a laptop computer, and a camera, it certainly proved it with the scale, Pyrex cup, and the packaging materials that were in proximity to Jackson, circumstantial evidence that he was in constructive possession of them. *Id*.

{¶40} After reviewing the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses and determining whether in resolving conflicts in the evidence, the jury did not lose its way and create such a manifest miscarriage of justice that Jackson's convictions must be reversed and a new trial ordered. Jackson's convictions, excluding the escape conviction, are not against the manifest weight of the evidence. *Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. The trial court, therefore, did not err in overruling Jackson's Crim.R. 29 motion as to these convictions. *Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229;

*Tenace,* 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386; *Kirkpatrick*, 8th Dist. No. 94950, 2011-Ohio-2257.

**{¶41}** As to Jackson's escape conviction, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Leonard.* Because of our conclusion that Jackson was never under arrest before jumping out of the window, this conviction is reversed.

**{¶42}** Jackson's first assignment of error is sustained as it relates to the escape conviction, and overruled as it relates to the remaining convictions. Jackson's second assignment of error is overruled. Jackson's escape conviction is reversed. This matter is remanded to the trial court with instructions to vacate this conviction. Jackson's remaining convictions are affirmed.

**{¶43}** Judgment affirmed in part and reversed in part and remanded.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MELODY J. STEWART, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR